```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TENNESSEE
                         WESTERN DIVISION
```
_____

| | |
|---|---|
| **LARRY WALKER,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | )   **No. 05-2780 Ml/P** |
| **METAL MANAGEMENT, INC.,** | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

_____

### ORDER DENYING MOTION FOR REMAND
_____

    Before the Court is Plaintiff's Motion for Remand, filed October 24, 2005. Defendant responded in opposition on November 10, 2005. For the following reasons, Plaintiff's motion is DENIED.

    Plaintiff initially filed a complaint in this case on October 7, 2005, in the Chancery Court of Shelby County, Tennessee. On October 18, 2005, Defendant filed a notice of removal to this Court pursuant to 28 U.S.C. § 1441 based upon the asserted diversity of citizenship of the proper parties to this action. Plaintiff asserts that the Court should remand this action to state court because Defendant has failed to establish that the amount in controversy meets the jurisdictional requirement under 28 U.S.C. § 1332.

    Section 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

district and division embracing the place where such action is pending ...." 28 U.S.C. § 1441(a). Specifically, § 1441(a) allows a defendant to remove an action filed in state court to a federal district court based upon the diversity of citizenship of the parties. See id.

Pursuant to 28 U.S.C. § 1332(a), federal courts have jurisdiction over disputes between diverse parties where the amount in controversy, exclusive of interest and costs, "exceeds the sum or value of $75,000." 28 U.S.C. § 1332(a). When a defendant seeks removal of a plaintiff's complaint on the basis of diversity of citizenship, the defendant bears the burden to prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. Gafford v. General Elec. Co., 997 F.2d 150, 160 (6th Cir. 1993). Here, there is no dispute that diversity exists between the parties. The issue before the Court is whether Defendant has shown that it is more likely than not that Plaintiff's claims exceed $75,000.

Plaintiff's Complaint alleges several state and common law violations arising out of his alleged discharge from Defendant's employment. Plaintiff also seeks a declaratory judgment and injunctive relief pertaining to a protective agreement between the parties.[1] In his Complaint, Plaintiff requests declaratory and

---

[1] Specifically, Plaintiff contends that his recent purchase and operation of Midtown Auto Parts and Salvage ("Midtown Salvage") does not violate the terms of a protective agreement that he signed while still an employee of Defendant. According to the Complaint, Midtown
(continued . . .)

-2-

injunctive relief in addition to an unspecified amount of compensatory damages, punitive damages, and attorney's fees and costs. Specifically, Plaintiff seeks:

- a temporary injunction "restraining and enjoining Defendant from taking any action to enforce the Protective Agreement against Plaintiff, pending the trial of this cause on the merits";
- a declaration by the Court that Plaintiff's purchase of Midtown Salvage does not implicate the competitive restrictions set forth in the Protective Agreement; that the Agreement constitutes an unlawful restraint on trade; and that the Agreement is null and void for want of consideration;
- actual and compensatory damages and attorney's fees for "failing to pay final wages and vacation and sick pay upon Plaintiff's discharge";
- compensatory and punitive damages and attorney's fees for "discharging Plaintiff for refusing to participate in or remain silent about Defendant's illegal activities";
- money damages for unlawful restraint of trade and attempting to control prices and for negligent and intentional misrepresentation; and
- an order directing "further general and equitable relief to which Plaintiff is entitled."

---

(. . . continued)
Salvage is not a competitor of Defendant because Midtown Salvage supplies scrap metal, whereas Defendant purchases, processes, and sells scrap metal to steel mills to be remelted.  (Compl. ¶¶ 8, 23.)

-3-

(Compl. ¶¶ 50,57,63,69,75,86,107 a-i.)

The Complaint does not specify the amount of monetary damages Plaintiff seeks to recover in this action.  In support of his motion to remand, Plaintiff submitted an affidavit in which he states that he is "not seeking damages in excess of $75,000 in this action" and that he does not believe that "the claims alleged in the Complaint, if proven, will exceed $75,000, excluding attorneys' fees and costs." (Aff. of Larry Walker, Compl. Ex A.)  The law in the Sixth Circuit is clear, however, that because jurisdiction is determined as of the time of removal, "a post-removal stipulation reducing the amount in controversy to below the jurisdictional limit does not require remand to state court."  Rogers v. Wal-Mart Stores, Inc., 230 F.3d 868, 872 (6th Cir. 2000)(explaining that "[i]f plaintiffs were able to defeat jurisdiction by way of a post-removal stipulation, they could unfairly manipulate proceedings merely because their federal case begins to look unfavorable").  Accordingly, Plaintiff's stipulation does not require remand in this case.[2]

---

[2] Moreover, even if Plaintiff had disavowed damages in an amount greater than $75,000 in his Complaint, the Court would not be precluded from making an independent inquiry into the amount of controversy.  Tennessee Rule of Civil Procedure 54.03 provides that except in the case of default judgment, "every final judgment shall grant relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings."  Tenn. R. Civ. P. 54.03.  The Sixth Circuit has held that Rule 54.03 may "enable a plaintiff to claim in her complaint an amount lower than the federal amount in controversy but nevertheless seek and recover damages exceeding the amount prayed for."  Rogers, 230 F.3d at 871; see also Lewis v. Exxon Mobil Corp., 348 F. Supp. 2d 932, 934 (W.D. Tenn. 2004)(finding that, in light of Tenn. R. Civ. P. 54.03, jurisdictional threshold was met where the complaint provided that the plaintiffs did not seek a claim in excess
(continued . . .)

The Court concludes, based on its review of Plaintiff's Complaint and the parties' submissions, that Defendant has met its burden to establish that, at the time of removal, the amount in controversy was more likely than not greater than $75,000.  Plaintiff seeks a variety of forms of unspecified and open-ended relief, including punitive damages and attorney's fees.  Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases.  Hayes v. Equitable Energy Resources Co., 266 F.3d 560, 572 (6th Cir. 2001)(citation omitted).  Here, Plaintiff seeks punitive damages under the Tennessee Whistleblower Statute and the common law for his alleged retaliatory discharge. Tennessee courts have held that punitive damages may be awarded for statutory and common law retaliatory discharge.  See Clanton v. Cain-Sloan Co., 677 S.W.2d 441, 445 (Tenn. 1984)(holding that punitive damages may be recovered in actions against employers for retaliatory discharge under workers' compensation law); Baines v. Wilson County, 86 S.W.3d 575, 580 n.2 (Tenn. Ct. App. 2002)(noting that punitive damages are available in suit for retaliatory discharge under common law).

It is also well settled that statutory attorney's fees may be considered in determining whether the amount in controversy meets the jurisdictional requirement.  Clark v. Nat'l Travelers Life Ins. Co.,

---

(. . . continued)
of $75,000 but demanded "judgment to be determined by a jury, for all incidental, consequential, compensatory and punitive damages . . .").

518 F.2d 1167, 1168 (6th Cir. 1975); Lucius v. Bayside First Mortg., Inc., 43 F. Supp. 2d 868, 871 (W.D. Tenn. 1999). Here, Plaintiff seeks an award of attorney's fees and costs in connection with his claims for violation of the Tennessee Wage Payment Statute and the Tennessee Whistleblower Statute.  Attorney's fees and costs are awardable under both provisions of the Tennessee Code.  See Tenn. Code Ann. § 50-2-204 ("The court shall, in cases of violation, in addition to any judgment awarded to the plaintiff or plaintiffs, allow reasonable attorney's fee and cost of the action to be paid by the defendant."); Tenn. Code Ann. § 50-1-304 ("Any employee terminated in violation of subsection (a) solely for refusing to participate in, or for refusing to remain silent about, illegal activities who prevails in a cause of action against an employer for retaliatory discharge for such actions shall be entitled to recover reasonable attorney fees and costs.").  Taking into consideration Plaintiff's request for punitive damages and attorney's fees, in addition to the other forms of relief sought in the Complaint, the Court concludes that it is more likely than not that Plaintiff's claims exceed $75,000.  See Lewis v. Exxon Mobil Corp., 348 F. Supp. 2d 932, 934 (W.D. Tenn. 2004)(concluding that defendant had met its removal burden where plaintiffs' complaint sought open-ended relief for "all incidental, consequential, compensatory, and punitive damages").

This conclusion is further supported in view of Plaintiff's request for injunctive relief.  In his Complaint, Plaintiff seeks to enjoin Defendant from enforcing a non-compete agreement that

-6-

Plaintiff alleges would cause him to "suffer immediate and irreparable injury, losses, and damages, . . . specifically, but not limited to, the loss of current and prospective income; [Plaintiff's] financial investment in Midtown Salvage; and ownership of Midtown Salvage." (Compl. ¶ 105.)[3]  The Supreme Court has held that "[i]n actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation."  Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 347 (1977).

Plaintiff's Complaint does not specify how much Plaintiff paid for Midtown Salvage, nor does it state Plaintiff's current or prospective income.  However, Defendant points to the fact that "Midtown was a supplier of scrap metal to [Defendant] for a number of years prior to Plaintiff's purchase of the business" and that in 2004, Defendant paid Midtown Salvage over $3 million and from January 2005 through October 2005, Defendant paid Midtown Salvage approximately $2 million.  (Gutchewsky Aff. ¶¶ 6–8.)[4]  Therefore, Defendant contends, and the Court agrees, that because Midtown Salvage's revenues since January 2004——from Defendant alone——totaled approximately $5 million, it is more likely than not that Plaintiff's

---

[3] According to Plaintiff's Complaint, Plaintiff purchased Midtown Salvage in reliance on Defendant's statements that Plaintiff would not be in violation of the non-compete agreement by doing so.  (Compl. ¶¶ 21-27.)

[4] According to Plaintiff's Complaint, "a significant percentage of all metal purchased by Defendant is supplied by Midtown Salvage . . . ."  (Compl. ¶ 23.)

-7-

investment in Midtown Salvage, as well as his current and future earnings, exceeds $75,000.

In sum, Defendant has met its burden to show that it is more likely than not that Plaintiff's numerous claims for unspecified and open-ended relief, including punitive damages, attorney's fees, and injunctive relief, exceed the statutory minimum of $75,000. Accordingly, Plaintiff's motion for remand is DENIED.

So ORDERED this 17th day of January, 2006.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE